Good morning, Your Honors. My name is Megan Meacham. I'm a certified law student. I'm being supervised by Mr. Coleman. We're here on behalf of the defendant and appellant Mr. Ricky Del Fenney. Since I'm aware that this Court has stated its ruling in United States v. Zavala, I'm going to focus on the breach of the plea agreement. In this case, the breach of the plea agreement was plain air. It substantially affected Mr. Fenney's rights, and it seriously interferes with the integrity, the fairness, and the public opinion of these judicial proceedings. What was the government obligated to do? The government was obligated to stick by what they agreed with in the plea agreement, and that was a downward departure because Mr. Fenney came forward with the offense before it was eminent or would have likely otherwise been discovered. That was the agreement. The government did recommend a downward departure, so why was there a breach? They did, but the case agent that the government agrees is an arm of the government breached the agreement in this case. We're not pending any blame at all for the breach on Ms. Perry, the AUSA, in this case, but it was the case agent that undermined this agreement. She looks relieved. It was the case agent that undermined No APR for her. No, it was the case agent that undermined this agreement. The problem is, didn't the plea agreement contemplate that full facts and explanation of the crime could be delivered to the Court and probation and everybody else, and isn't that just what the case agent did? To the Court, Your Honor, yes. The case of United States v. Allen makes it very clear that the duty of candor to the Court is when the district court asks anyone, I mean, the AUSA, the probation, whoever, that they have to come forward with the proper and correct information. Probation is an arm of the Court. That's true, but there's a distinction made when a case agent or when an arm of the government volunteers that information. So when the probation department contacts this case agent, calls him on the phone and says, you know, do you have an opinion in this case, he should have said, you know, no, we can refer it to the AUSA in this opinion, or taken a stance it was an agreement with the plea agreement, as opposed to what he did was volunteer that information. The language is very clear in Allen that when that information is volunteered, as it was in this case, that that is a breach of the plea agreement. That's a fine distinction, isn't it? It is, Your Honor, but it's an important one. And when you have that breach, and like a breach in this case, it affected Mr. Kenney's case. Well, I mean, the probation officer is trying to get information to put together a probation report, so he may ask more specific or more general questions, but if you're going to be helpful to the probation officer, you don't sort of give monosyllabic answers. It's not like being cross-examined where you sort of give monosyllabic answers. You know, you tell the probation officers what you think will be relevant to the probation report. Well, the duty that the case agent had in this case was not to volunteer that information. Rather, his duty was to stand behind the plea agreement, the contract, in essence, that bound the government in this case, the contract that Mr. Fenney entered into, thinking that he was... Where in the contract does it say the government can't provide information that would stand in the way of the departure? It's not explicit, but it definitely is implicit in the contract language. We have to read between the lines. Well, when you agree to a certain downward departure, as we did in this case, that is the basis for which the case agent had to maintain... I thought that the basis of what's in the contract is what's in the contract, and that you may have had certain hopes or expectations, desires, you know, maybe delusions that are not written in the contract is of no legal significance. That's what I learned when I was in law school. Well, Your Honor, what is in the contract is this downward departure, this three-point downward departure, and that was an agreement based on certain facts. What specific language do you rely on? Quote me the language in the contract that you rely on that you think was breached. I think that the breach occurred. It was on the excerpts of the record. The breach occurred. If you turn to the plea agreement, and... I have it right in front of me. Okay. You can look where on page 11 of the excerpts of the record where it's enumerated the top number 5, voluntary disclosure of the offense. That's section 5K2.16, and that language states... 11 of the excerpt or 11 of the plea agreement? 11 of the excerpt. Page 8 of the pleading, or of the plea agreement. Okay. I'm with you. Okay. You see where it says in the brackets section 5K2.16? Sure. Line 5. Yes. What that says, what that provision, what that downward departure says is that the defendant came forward with this offense when it would not otherwise have been discovered. That was the agreement that they made. That, and then if you then look at in the pre-sentence report, the case agents... No, I'm sorry. I just want to make sure I have all of the words in the plea agreement that you rely on as having been established a duty that was violated. Right. And what you're referring to is the language from page 8 of the plea agreement, excerpt of records, page 11, line 9, item number 5? Yes. That's it? That's the downward departure that's at issue here. This is where he breached, yes. This is the language that they breached. This is the language of the agreement. Exactly. It doesn't even seem like a promise to me. There's nothing, there's no promise here. There's nothing... The promise was for that downward departure and... Well, you can't promise a downward departure. You can promise a recommendation. Right. You can promise a recommendation and you can promise not to undermine that recommendation. Where is that? It's implicit in the agreement, Your Honor. It's not set out. Like, we didn't anticipate... What are the words that are closest to helping you? You know, it's got to be implicit in something. There's nothing implicit in the phrase, voluntary disclosure of offense, 5K. So there must be something in the agreement that you rely on, some language that's where you can imply some sort of promise. Which is that language? That section that it cites to you right there, in the sentencing guidelines, that section refers to a downward departure. It's not a promise of anything. No, I understand. What is it in the language of the agreement that embodies a promise to do something that you then say implicit in that promise is a promise not to undermine this? There must be something that they promise. There must be somewhere... They promise to make a recommendation... Show me where. I want you to quote things. I want you to tell me where. I guess it would be on page 10. It starts with sentencing guideline calculations. I'm sorry. Page 10, line? Page 10, lines 20 through 22, following to page 11. Okay. And let's read it all together then. Sure. Although the parties understand that the guidelines... I'm sorry, I'm sorry. Oh, I'm sorry. This is page 10 of the excerpts? Of the excerpts, Your Honor, yes. Okay. I'm going backwards then. Page 10. I'm sorry. Go ahead. Although the parties understand that the guidelines are only advisory and just one of the factors the Court will consider under 18 U.S.C. section 3553A in imposing a sentence, the parties will jointly recommend, the parties will jointly recommend the following base level offense. And they did. Yeah, they did. They did, but they undermined that recommendation. In essence, they gave the recommendation and cut it out at the same exact... What do you do with the other language? Nothing in this plea agreement shall be construed as limiting the government's duty to provide complete and accurate facts to the District Court and the U.S. Probation Department. The probation... It's implicit in that. Their duty was to stand by the plea agreement. Their duty was to stand by the facts that they agreed on in the plea agreement. And those facts were that the defendant came forward when this offense would not otherwise have been discovered. See, that was their duty. That's the facts upon which they agreed. And that's the contract that was entered. What Mr. Smithers thought. Mr. Smithers was unfortunately a victim in this case who was heard at the sentencing hearing, but the District Court judge made up his mind about that sentence before he even heard from Mr. Smithers. No, Mr. Smithers was in the probation report. No, I know. But as far as the downward departure... The information from Smithers came to the judge in the probation report before the hearing. Not the... Okay, let's assume you've got error. Let's assume the error is even playing. How does it affect substantial rights given Smithers? This affects substantial rights because it's a 38 percent... I'm sorry. Because in the case of Castillo-Castellano, it states that if the court might have possibly departed from the sentencing guideline, it affects substantial rights. The information from Smithers was not regarding whether or not this offense would have come forward, whether or not there was a pending investigation. That information came from the case agent as evidenced in the probation... What did Smithers impart to the probation office and to the court? He imparted that he was lost a substantial amount of money, that he was injured, that... And that the defendant really was coming forward to try to mitigate, not... Because he knew that the roof was about to fall in. But he doesn't... Not because he had any change of heart about the crime. Right, but he doesn't make that assertion until at the hearing. And the district court judge comes out at the beginning of the hearing, and this is excerpt of the record... It's a district judge. I'm sorry. The district judge. Thank you. On page 19 of excerpts of the records, comes out and says, you know, I'm thinking of setting this tentatively at 37 months. At that point, he had the sentencing agreements from both the defendant and the government. But Smithers couldn't say very much. All he could say is, I was hurt and I was going to go complain. But people complain that they were damaged all the time, and the police say, well, you know, we're not interested. Very much more significant, when an officer of the law says, you know, I know there was an investigation going on. I mean, it's quite obvious that the two things are very different. You have not challenged the failure to... the substantive decision of the court to deny your client the three points downward departure... I guess it's not a downward departure, the three... deduction of the three points for voluntary disclosure of offense. You didn't challenge it factually, and you're not challenging it here legally. Is that correct? Well, once the plea agreement is breached, that's what we're challenging. I know what you're challenging. I'll ask you a question about something else. I know what's in your brief. You did not, in the district court, dispute factually what the agent told the probation officer. He didn't say that, but it wasn't true. I want the district court to make a factual determination on that point. No. There was no objection raised. And you do not challenge on appeal the sufficiency of the district court's decision in light of that information. You think it was okay to deny the three points. No. Because factually, we don't know. We know that Mr. Fenney came forward, and he's the one who prompted all the investigation. He's the one who volunteered the information to his investors before they would have ever found out. So he's the one who, in essence, initiated this entire ball rolling, and then went to the attorney. I have no idea what you're saying. He's the one. Mr. Fenney, the defendant, is the one who brought this offense to light. I ask you a question. You did not challenge the facts below. You didn't say we dispute that, in fact, our client knew there was an investigation going on. That was not disputed below. The probation officer had in his report, there was an objection to considering the information, but there was no separate objection to the truthfulness of the information. I'm not sure there was an objection either to even considering the information from the record. Oh, that's right. That's why I'm arguing for plain air today. And on appeal, you're arguing that the district court should not have considered the information, but you don't make a separate argument that even if the district court considered the information, it was not enough to deny the three points. I don't think the district court should have considered the information. I understand. That's what you're arguing. But you're not attacking the evidentiary basis for the district court's decision. Just to the level that it was to a breach of the plea agreement, yes. And you're not challenging the legal conclusion that assuming those facts to be true, they are sufficient to deny the three-point departure. It wasn't at all clear to me that it was. People always are afraid the police are after them and that the house of cards is going to fall down and all those things. But you're not challenging that on appeal. I didn't see it anywhere in your brief. No, if we assume the facts are true, then the district court was in his right to do that downward departure. But it was still a breach. I think that's more than not appealing. You just conceded the point. No, but we didn't concede the point that there was, in fact, a breach. I understand that part. But you don't the separate point as to whether these facts justify denial of the departure, that you conceded. You conceded that if those facts are true. If they are true, but I'm not conceding that they're true or not. Let me ask you another question, then. How do you deal with this language in the plea agreement? And I'm reading now from page 14 of the excerpt, page 11 of the plea agreement at the very bottom. Because we know there was no objection. And the language reads in the plea agreement, if defendant believes the government's recommendation is not in accord with this plea agreement, defendant will object at the time of the sentencing. Otherwise, the objection will be deemed waived. So by no objection, the language that I'm looking at here suggests that you've waived the opportunity even to bring up plain air. My answer to that is twofold. This plea agreement was breached before it even got to the district court, because it was submitted simultaneously with the pre-sentence report. Second, I invite the Court's attention to the case of Franco Lopez. And in that case that's cited in the government's brief, it states that even if you don't make an objection at the time of trial, it is not waived with respect to the breach of the plea agreement. Yeah, but here there is a specific statement in here that it's waived. The case that you're talking about I don't think had a specific statement that failure to object will be deemed waiver. Well, but this plea agreement was breached before we got to this. But didn't you have an, your obligation under the plea agreement was to object. If not, it's waived. That's not just, that's just not forfeiture. That's explicit waiver. But the breach occurred, like the district court judge had said information, the breach occurred at the pre-sentence report. But you've got to object at the sentencing so it can be dealt with there. Right. And that's why the We're an appellate court. We're not the trial court. I understand. That's why the doctrine of clear error is so important in this case, because it does protect substantial rights. And that's why it's there. You didn't join a claim for ineffective assistance of counsel in your brief, I noticed. No. For whatever reason, the objection was not made. But it's this, this clear error. This has been ineffective assistance of counsel, but it's not in your brief, so I guess it's in your favor. Why don't we hear from the government? Maybe we'll give you a minute for a buzzword or something. Thank you. Good morning, Your Honors. Ann Parrott on behalf of the United States. Our position is that based on a standard of plain error, there was no breach of the plea agreement. First of all, the plea agreement, by its terms, binds the U.S. Attorney's Office, but doesn't bind any other agency, and that's actually listed in the terms of the plea agreement. Well, you pretty much conceded that in your brief, though, didn't you? I'm sorry. You gave that point away in your brief. I thought you may have, you conceded that it applied to the case agent, too. He's considered an arm of the government, Your Honor, however. That's not the question I asked. Yes, sir. You conceded that in your brief, didn't you? I don't think so. I thought you had. Well, to the extent that I refer to him as he can be considered to be an arm of the government, however, he's not in a position to bind the U.S. Attorney's Office in terms of a plea agreement. Well, I don't know. When he's in court, you know, and the judge asks him a question, sometimes judges do a sentence in the last case agent. And he says, by the way, Your Honor, let me tell you, I really think you should throw the book at this guy and give him the worst. I can't control that, Your Honor. I can't control that. I can't control what the agent is going to say. If he's in court and he does something like that, I'd better throw a net on top of him. I agree. But in this case, Mr. Miller from the Probation Department contacted the agent, as is the standard procedure in our district, asked him what he thought about the case. The agent opined. Do you think the district court was substantively correct in denying the three points? We actually, I want to answer that directly, but I need to digress just a little bit. We actually You want to, but you're not going to. I'll give it my best shot. Was he substantively correct? I'm not certain, Your Honor. And I say that because In fact, Mr. Finney and his attorney did bring us the case. I've never had that happen in 20 years as a prosecutor. I mean, it's highly debatable. I mean, when you do a pyramid scheme or whatever they say, the kind of fraud that comes here, and a lot of times, you're always thinking that the world is falling, and you don't know when the end is going to come, and there are lots of ways people respond to that. One way is to flee. I'm not telling you anything new. Right. One way is to leave the country. Another way is to sort of go underground. Another way is to just brazen it out until they get caught. Sure. So this struck me as I think you're saying it struck you as highly unusual, where he actually goes in and I didn't see anything in the case agent's disclosure. Oh, I knew there was an investigation going on at the state level. That really undermined that. I was a little surprised both in this record, the nine and the three points, even taking that information into account, and it wasn't objected to below, and it wasn't raised on appeal here, even as plain error. So it's a little weird. You sure you don't want to just give him the three points? Think if you just encourage two or three more people to come forward and present a case like this to you, wouldn't it be a grand? Believe me, Your Honor, it was a very unusual day for me. And in this particular case, we even offered the district court judge the opportunity to depart. District judge. The district judge, Judge Zabraw, the opportunity to depart under a combination of circumstances due to the total unusual nature of the way that the case came to our office. He declined to do that, and I think the record is really clear that he was really, really influenced by the victim impact statements that were required by law to be brought to his attention, and also the individuals who testified in court. Well, Smithers had a million dollars, then he had nothing. Right. And he also wrote in his letter, he only turned himself in, meaning the defendant, to the FBI because he knew I had filed a complaint with the San Diego District Attorney's Office. What followed was a year of horrible litigation, which would have been made much easier had Fenney cooperated, but he chose to stay hidden, and thereby made a disastrous situation even worse. That's what you're talking about? That's pretty fair. We had a lot of tears that day, Your Honor. And Mr. Fenney... Well, the district court, of course, after Booker can do just about anything. I agree. But one thing he can't do is to misapply the guidelines. True. It has to do with fair calculation of the I mean, I don't think he can say, well, I'm so sorry for the victims, I'm going to deny him the three points to which he's entitled, even though he could say, I'm going to give him the three points he's entitled, and then take back the same number of months because I'm sorry for the victims. It may seem like the same result, but you can do it one way, and the district court can do it one way, and I can't do it another way. I agree. The district judge declined to do it. As I say, we offered him another way of doing it, based on that same theory that the case had come to us in an unusual fashion and under a combination of circumstances. However, the failure of a court to doubt and were to lay it apart is normally not even reviewable on appeal. So this really did present an unusual set of circumstances. Well, this is a guided departure. Well, of course, past Booker, who knows? And the court should also be aware in considering the plain error analysis that one of the issues is... This isn't a departure. This is what we used to call a guided departure? Right. Okay. And one of the considerations should be the detriment to Mr. Fenney. The court should be aware that under the plea agreement as contemplated by the parties, the guideline range was 27 to 33 months, and he received a sentence of 37 months. Well, I'm sure that four months is very onerous to Mr. Fenney. In the great scheme of justice, it was not a substantial increase. Have you taken a position that they have waived the opportunity to present this issue to us on appeal by not objecting its sentencing? I didn't in our brief, sir. Why not? Am I wrong about that? I don't think so. Why didn't you present that to us then? An abundance of fairness, no doubt. I'm not being in the least sarcastic. I think you've been eminently fair here, and I appreciate it. Your Honor, I just didn't. Okay. Good enough? Anything else? I don't think we have anything further. Thank you. Would you like a minute for rebuttal? Sure, take it. Ms. Perry? Yes. Don't walk by this opportunity to have us chew on your argument. I mean, before you start, you should know that my experience, lawyers always get into deep trouble on rebuttal and lose ground. But go right ahead. Well, I think, Judge Trott, you brought my first point to light, and that was that the government did not raise the waiver in their brief and it's therefore waived. The defendant also needs to personally effect the waiver in order for it to be, you know, in order for it to work in this case. And effective assistance of counsel. There may have been, you know, an effective assistance in failing to object. However, it's not an issue to raise on direct appeal. It's better for a habeas corpus. And for your question, Judge Kuczynski, we did not raise the challenge to the denial of departure in the briefs. We'd be happy to submit supplemental briefing, and we request to do so. Where do you go to law school? The California Western School of Law. Congratulations. Thank you, Your Honor. Just in summation, we request that this case be reversed and remanded to district court with a new pre-sentence report in front of a new judge so Mr. Penny can get his bargain that he struck the blame. Perhaps Judge Malone can take over. No, but I was glad to hear you say the district court could do anything they want. Is this one of the new judges in the I don't recognize the name. I guess so. Okay, very good. Thank you very much. Thank you.
judges: Kozinski, Trott, Molloy